1

2

3

4              IN THE UNITED STATES DISTRICT COURT

5            FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7    COALITION TO DEFEND AFFIRMATIVE  ) Case No. 10-641 SC
     ACTION, INTEGRATION AND IMMIGRANT )
8    RIGHTS AND FIGHT FOR EQUITY BY ANY ) ORDER GRANTING
     MEANS NECESSARY, et al.,         ) MOTION TO DISMISS
9                                     )
                                      )
10            Plaintiffs,             )
                                      )
11        v.                          )
                                      )
12                                    )
     ARNOLD SCHWARZENNEGER, in his    )
13   official capacity as Governor of )
     the State of California, and MARK )
14   YUDOF, in his official capacity as )
     President of the University of   )
15   California,                      )
                                      )
16            Defendants,             )
                                      )
17   _____ )
                                      )
18   WARD CONNERLY, and AMERICAN CIVIL )
     RIGHTS FOUNDATION,               )
19                                    )
                                      )
20            Defendant-Intervenors.  )
     _____ )

21   I.   **INTRODUCTION**

22        This action was initiated by Plaintiffs Coalition to Defend

23   Affirmative Action ("CDAA"), Integration and Immigrant Rights and

24   Fight for Equality by Any Means Necessary ("BAMN"), and fifty-six

25   individually named California high-school and college students

26   (collectively, "Plaintiffs").  ECF No. 1 ("Compl.").  Plaintiffs

27   challenge the constitutionality of Section 31 of Article I of

28   California's constitution ("Section 31"), which bans race-based

**United States District Court**
For the Northern District of California

discrimination and preferential treatment by the state.  <u>Id.</u>
Specifically, Plaintiffs argue that Section 31, as applied by the
University of California in formulating its student admission
policies, violates the Fourteenth Amendment's Equal Protection
Clause.  <u>Id.</u>  Now before the Court is a Motion by Defendant-
Intervenors Ward Connerly ("Connerly") and the American Civil
Rights Foundation ("ACRF") (collectively, "Intervenors") to dismiss
this action with prejudice.  ECF No. 49 ("Mot.").  Plaintiffs
filed an Opposition, ECF No. 50 ("Opp'n"), and Intervenors filed a
Reply, ECF No. 51 ("Reply").  For the following reasons, the Court
GRANTS Intervenors' Motion.

**II.   <u>BACKGROUND</u>**

The following facts are taken primarily from Plaintiffs'
Complaint; for the purposes of this Motion under Rule 12(b)(6) of
the Federal Rules of Civil Procedure, the Court assumes them to be
true.  The University of California ("UC") is a public university
system chartered in 1868 by the state of California.  Compl. ¶ 110.
The UC's fundamental governing structure is provided by
California's constitution, which establishes the UC Regents as its
governing body.  Cal. Const. art. IX, § 9(a).  California's
constitution provides the UC Regents with "full powers of
organization and government, subject only to such legislative
control as may be necessary to ensure the security of its funds and
compliance with the terms of the endowments of the university . . .
."  Cal. Const. art. IX, § 9(a).  The UC Regents' power extends to
determining student admission policies for the UC's ten university
campuses.  Compl. ¶ 112.

**United States District Court**
For the Northern District of California

In the 1970s, the UC Regents implemented student admission policies to increase the number of enrolled underrepresented minority students. Id. ¶ 125. These policies considered the race of the student as an admission factor. Id. While these policies boosted the number of enrolled minority students, they were unpopular with many California citizens, and in 1995, newly appointed UC Regent Connerly launched a campaign against so-called "affirmative-action" admission policies in California.[1] Id. ¶ 131. That year, the UC Regents adopted a policy that "banned any constituent part of the University from considering race in admitting students for any purpose, including attempts to ensure that the entering classes were racially diverse and integrated." Id. ¶ 136.

Connerly then led a drive to amend California's constitution through voter initiative to prohibit the state from engaging in affirmative-action programs. Id. ¶ 138. In November 1996, Proposition 209 -- the Connerly-supported voter initiative -- was approved by California's voters and written into the California constitution as Section 31 of Article I.[2] Id. ¶ 140.

Section 31 now provides:

> (a) The state shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting.

[1] The Court adopts the definition of "affirmative action" used by the Ninth Circuit in an earlier challenge to Section 31: "state programs that use race or gender classifications." Coal. for Econ. Equity v. Wilson, 122 F.3d 692, 700 n.7 (9th Cir. 1997).

[2] While this Court refers to the proposition and subsequent constitutional amendment exclusively as "Section 31," papers submitted by the parties and previous court rulings use "Section 31" and "Proposition 209" interchangeably.

3

**United States District Court**
For the Northern District of California

. . . .

>           (f) For the purposes of this section, "state"
>           shall include, but not necessarily be limited
>           to, the state itself, any city, county, city
>           and county, public university system, including
>           the University of California, community college
>           district, school district, special district, or
>           any other political subdivision or governmental
>           instrumentality of or within the state.

Cal. Const. art. I, § 31.

The UC Regents have not considered race as a factor in student admissions decisions since 1995.  Compl. ¶¶ 141-44.  Consequently, while black, Latino, and Native American students comprise more than thirty percent of the newly admitted students at UC's Riverside and Merced campuses, the number of minority students enrolled at the most selective campuses in Berkeley ("UC Berkeley") and Los Angeles ("UCLA") has decreased significantly.  Id. ¶ 142.

Section 31 was immediately challenged in federal court.  Coal. for Econ. Equity v. Wilson, 122 F.3d 692 (9th Cir. 1997) ("Wilson").  The district court found that Section 31 violated the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution, and ordered a preliminary injunction barring the state from enforcing it; a Ninth Circuit panel reversed.  Id.  The panel held that the Wilson plaintiffs had "no likelihood of success on the merits" of their claims, holding that Section 31 was constitutional under the Equal Protection Clause's "conventional" and "political structure" analyses, and holding that Section 31 was not preempted by Title VII of the Civil Rights Act of 1964.  Id. at 701-11.  The Ninth Circuit denied a petition for an en banc hearing.  Id.  Section 31 has also withstood several equal protection challenges to its application in government contracting.

E.g., Hi-Voltage Wire Works, Inc. v. City of San Jose, 12 P.3d 1068 (Cal. 2000), Coral Const., Inc. v. City and County of San Francisco, 235 P.3d 947 (Cal. 2010).

Now, Plaintiffs bring the current action, claiming that Section 31, as applied by the UC Regents in formulating student admission policies, violates the Equal Protection Clause.  Compl. ¶¶ 195-215.  Plaintiffs argue that the current factors the UC considers in its student admission policies -- standardized test scores and a weighted grade point average that favors students who have taken honors or advanced placement classes -- reflect "the separate and distinctly unequal elementary and secondary education" provided to California's minority students.  Id. ¶¶ 20-22. Plaintiffs argue that because the UC cannot directly consider race as an admission factor, it cannot effectively counteract the allegedly prejudicial effects of these other factors.  Id. ¶ 201. Plaintiffs seek both a preliminary and permanent injunction restraining the enforcement of Section 31 "as it applies to the admission, education and graduation of students at the University of California." Id. ¶ 204.

After the Court granted Intervenors' motion to intervene as Defendants, see ECF No. 42, Intervenors filed the present Motion. Intervenors argue that the Ninth Circuit's opinion in Wilson precludes Plaintiffs' constitutional challenge to Section 31.  Mot. at 1-7.  In response, Plaintiffs argue that Wilson was wrongly decided, that Wilson's logic is inconsistent with later Supreme Court opinions, and that Wilson is not controlling because it was a facial, rather than as-applied, constitutional challenge to Section 31. See Opp'n.

United States District Court
For the Northern District of California

III. **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A motion to dismiss should be granted if the plaintiff fails to proffer "enough facts to . . . nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. While the court should generally give plaintiff leave to amend a deficient complaint, it may dismiss an action with prejudice if the complaint is predicated on a misrepresentation of law such that amendment would be futile. Eminence Capital LCC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

IV. **DISCUSSION**

Plaintiffs' Complaint asserts two causes of action: "Count One" is "Racial Discrimination in the Structure of Government," and

**United States District Court**
For the Northern District of California

"Count Two" is "Racial Discrimination in Violation of the Equal Protection Clause of the Fourteenth Amendment." <u>See</u> Compl. Plaintiffs clarify in their Opposition that these two causes of action are both equal protection challenges to Section 31. <u>See</u> Opp'n at 11-20. The second is a challenge under the "conventional" equal protection analysis, which applies to government-sponsored racial preferences; the first is a challenge under the "political structure" equal protection analysis, which recognizes "a right to fairness in the political <u>process</u>, as opposed to entitlement to a particular <u>outcome</u>." <u>Coal. to Defend Affirmative Action, Integration and Immigration Rights v. Regents of the Univ. of Michigan</u>, 592 F. Supp. 2d 948, 950 (E.D. Mich. 2008) (emphasis in original).

**A.   <u>Plaintiffs' Conventional Equal Protection Challenge</u>**

The Equal Protection Clause of the Fourteenth provides: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Under the conventional equal protection analysis, a reviewing court must analyze all racial classifications imposed by state action under "strict scrutiny." <u>Grutter v. Bollinger</u>, 539 U.S. 306, 326 (2003). The first step is identifying the racial classification that the state draws; the second is identifying whether this classification is justified by a compelling state interest; the third is to determine if the classification is narrowly tailored to further that interest. <u>Wygant v. Jackson Bd. of Educ.</u>, 476 U.S. 267, 285 (1986)

The Ninth Circuit panel applied this standard in <u>Wilson</u>. 122 F.3d at 702. The panel held that the challenge to Section 31

failed the first step, holding that Section 31 does not make racial classifications, but rather prohibits them. Id. The court wrote: "A law that prohibits the State from classifying individuals by race or gender a fortiori does not classify individuals by race or gender." Id.

Intervenors argue that this Court's analysis should stop here: because Wilson has ruled that Section 31 does not make a classification on the basis of race, and because this Court is bound by the precedent set by the Ninth Circuit, any conventional equal protection challenge to Section 31 must fail. Mot. at 1-2.

Plaintiffs argue that because Wilson was a facial challenge to Section 31, it should not preclude Plaintiffs' as-applied challenge. Opp'n at 14. Plaintiffs argue that Wilson was premised on the idea that affirmative action constituted "preferential treatment," and argue that "affirmative action in higher education authorizes not 'preferences,' but measures to overcome preferences that favor white and Asian American students." Id. at 4. Plaintiffs argue, essentially, that the other factors the UC considers -- such as standardized testing scores and grade-point averages -- discriminate against black, Latino, and Native American students, and thus affirmative action is necessary to counteract their discriminating effects. See Opp'n at 5-9, 20-22.

Plaintiffs essentially argue that Wilson involved a broad facial challenge to Section 31, and the specific scenario Plaintiffs allege above -- a need to use race as an admission factor to counteract other forms of discrimination -- was not before the court. The record, however, proves otherwise. As the lower court in Wilson clearly stated:

United States District Court
For the Northern District of California

> It is thus essential to keep in mind that plaintiffs' constitutional challenge to Proposition 209 is not, in fact, a facial challenge to the entire initiative. Rather, it is much narrower in scope: it is a challenge only to that slice of the initiative that now prohibits governmental entities at every level from taking <u>voluntary action</u> to <u>remediate past and present discrimination</u> through the use of constitutionally permissible race- and gender-conscious <u>affirmative action programs</u>.

946 F. Supp. 1480, 1488 (N.D. Cal. 1996) (emphasis added).

As such, the Ninth Circuit considered the very scenario Plaintiffs now allege. The court found that in barring the use of constitutionally permissible racial preferences to remediate past and present discrimination, Section 31 did not violate the Equal Protection Clause. <u>Id.</u> As such, <u>Wilson</u>'s facial challenge to Section 31 covers the specific application of Section 31 Plaintiffs allege is unconstitutional.

Additionally, Plaintiffs devote a great deal of space in their Opposition to criticizing the logic of <u>Wilson</u>. They make these arguments to the wrong court, as this Court is bound by stare decisis. "A district judge may not respectfully (or disrespectfully) disagree with his learned colleagues on his own court of appeals who have ruled on a controlling legal issue, or with Supreme Court Justices writing for a majority of the Court." <u>Hart v. Massanari</u>, 266 F.3d 1155, 1170 (9th Cir. 2001).

Because the Ninth Circuit has already determined that a conventional equal protection challenge to Section 31, as it applies to all state-sponsored affirmative action programs, must fail, the Court finds that Plaintiffs' traditional equal protection challenge fails. Furthermore, the Court finds Plaintiffs' challenge to Section 31 is so clearly precluded by <u>Wilson</u> as to

**United States District Court**
For the Northern District of California

1   render amendment of the claim to be futile.  <u>Eminence Capital,</u> 316

2   F.3d at 1052.  For these reasons, the Court DISMISSES WITH

3   PREJUDICE Count Two of Plaintiffs' Complaint.

4       **B.**   <u>**Political Structure Equal Protection Analysis**</u>

5       The political structure doctrine of equal protection was

6   developed by the Supreme Court in <u>Hunter v. Erickson</u>, 393 U.S. 385

7   (1969), and <u>Washington v. Seattle School District No. 1</u>, 458 U.S.

8   457 (1982) ("Seattle").  Under this analysis, the Equal Protection

9   Clause reaches "a political structure that treats all individuals

10  as equals . . . yet more subtly distorts governmental processes in

11  such a way as to place special burdens on the ability of minority

12  groups to achieve beneficial legislation."  <u>Seattle</u>, 458 U.S. at

13  467.

14      The Ninth Circuit found in <u>Wilson</u> that Section 31 did not

15  violate the Equal Protection Clause under this political structure

16  analysis.  122 F.3d. at 705-07.  The Court found that this doctrine

17  was not applicable to Section 31 because it was not a state action

18  that discriminated on the basis of race.  <u>Id.</u>  The court also noted

19  that the burden placed by Section 31 was not "an impediment to

20  protection against unequal treatment" but "an impediment to

21  preferential treatment," holding: "Impediments to preferential

22  treatment do not deny equal protection."  <u>Id.</u> at 708.  Intervenors

23  argue that, in light of <u>Wilson</u>, Plaintiffs' political structure

24  argument should fail as a matter of law.

25      Plaintiffs' main argument in response is that <u>Wilson</u>'s logic

26  is inconsistent with <u>Grutter v. Bollinger</u>, 539 U.S. 306 (2003).

27  Opp'n at 16.  <u>Grutter</u> does not discuss the political structure

28  doctrine.  Rather, it involved a conventional equal protection

challenge to the University of Michigan's School of Law's practice
of considering race as one factor in student admission.  Id. at
311-16.  The Supreme Court upheld the practice, finding that the
state had a compelling interest in attaining a diverse student body
and that the school's admissions policies were narrowly tailored to
serve this interest.  Id. at 342-44.

The Court is not convinced that Grutter overrules Wilson.
Grutter does not hold that the Constitution requires the use of
race in student admission decision; rather, it holds that the
Constitution tolerates the use of race as one of many admission
factors.  Id.  As such, Grutter says nothing to refute Supreme
Court precedent, cited in Wilson, that "the Equal Protection Clause
is not violated by the mere repeal of race-related legislation or
policies that were not required by the Federal Constitution in the
first place."  Crawford v. Bd. of Educ. of the City of Los Angeles,
458 U.S. 527, 538 (1982).  Because use of race as a factor in
student admission decisions is permitted but not required by the
Equal Protection Clause, Wilson is not inconsistent with Grutter.

Furthermore, as Intervenors point out, Grutter even indirectly
refers to Section 31.  539 U.S. at 342.  Grutter held that racial
preferences, while not presumptively unconstitutional, must be
limited in time.  Id.  In so holding, the Supreme Court cited the
"race-neutral alternatives" to racial preferences used by
"Universities in California, Florida, and Washington State, where
racial preferences are prohibited by state law."  Id.  The Court
suggested that California and other states were "laboratories"
experimenting with alternatives to racial preferences, writing:
"Universities in other States can and should draw on the most

**United States District Court**
For the Northern District of California

1  promising aspects of these race-neutral alternatives as they

2  develop."  Id.  This discussion refutes Plaintiffs' contention that

3  the Supreme Court intended Grutter to overrule Wilson.

4      Plaintiffs make other arguments that Wilson has been

5  superseded.  Plaintiffs state that "the substantive standards of

6  Proposition 209 are, as applied in the area of higher education, in

7  violation of the Fourteenth Amendment because their sole aim and

8  effect is to exclude minority students," and argue that Wilson

9  ignored this "for reasons that have been superseded by later

10 decisions by the state and federal courts."  Opp'n at 4-5.

11 Plaintiffs do not clarify which later decisions supersede Wilson

12 with respect to this issue.  However, it has been the law since

13 Crawford that "a law neutral on its face still may be

14 unconstitutional if motivated by a discriminatory purpose."  458

15 U.S. at 544.  Crawford predates Wilson by fifteen years, and was

16 discussed at length by the court in Wilson.  122 F.3d at 705-09.

17 Thus if Wilson failed to analyze the motivation behind the adoption

18 of Section 31, this inconsistency would have been apparent in 1997,

19 and was not created by later Supreme Court case law.

20     Finally, Plaintiffs attempt to identify other inconsistencies

21 between Wilson and subsequent Supreme Court cases.  Plaintiffs take

22 issue with the following statement in Wilson: "The alleged 'equal

23 protection' burden that Proposition 209 imposes on those who would

24 seek race and gender preferences is a burden that the Constitution

25 itself imposes."  Id. at 708.  Plaintiffs write: "The Wilson

26 panel's claim that a law banning all 'preferences' was simply a

27 restatement of the Fourteenth Amendment was never true."  Opp'n at

28 22.  Plaintiffs claim: "Grutter and subsequent decisions have made

**United States District Court**
For the Northern District of California

1  clear that the theory that the Constitution bars all consideration

2  of race is 'inconsistent in both its approach and its implications

3  with the history, meaning and reach of the Equal Protection

4  Clause.'"   <u>Id.</u> (citing <u>Parents Involved in Cmty. Schs. v. Seattle</u>

5  <u>Sch. Dist. No. 1</u>, 551 U.S. 701 (2007).

6       Plaintiffs do not explain, however, how these alleged

7  inconsistencies destroy the fundamental logic of <u>Wilson</u>.

8  Plaintiffs cite to no political structure cases decided after

9  <u>Wilson</u>.   Rather, they try to wrench inconsistencies out of <u>Wilson</u>'s

10  dicta.   Such inconsistencies do not so poison <u>Wilson</u>'s logic as to

11  free this Court from its duty to apply the precedent set by its

12  reviewing court.

13       For these reasons, the Court finds that Plaintiffs' political

14  structure equal protection challenge to Section 31 fails as a

15  matter of law.   Because amendment would be futile, the Court

16  DISMISSES WITH PREJUDICE Count One of Plaintiffs' Complaint.

17

18  **V.**   <u>**CONCLUSION**</u>

19       For the foregoing reasons, the Court GRANTS the Motion to

20  Dismiss by Defendant-Intervenors Ward Connerly and the American

21  Civil Rights Foundation.   This Complaint filed by Plaintiffs

22  Coalition to Defend Affirmative Action, et al. is DISMISSED WITH

23  PREJUDICE.

24

25       IT IS SO ORDERED.

26

27       Dated: December 8, 2010

28                                          _____
                                            UNITED STATES DISTRICT JUDGE